```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Monica S. Rose,                    :

       Plaintiff,              :

   v.                              :     Case No.  2:15-cv-1032

Friendly Finance Corporation,  :
et al.,                                   Magistrate Judge Kemp
       Defendants.             :


OPINION AND ORDER

    This matter is before the Court to consider motions filed by both defendants, Friendly Finance Corporation and American Modern Home Insurance Company, to strike plaintiff's class allegations. (Docs. 61 & 62).  The motions have been fully briefed.  For the following reasons, both motions will be denied.

### I. Background

    A more complete background of this case can be found in the Court's Opinion and Order of February 12, 2016.  See Rose v. Friendly Finance Corp., 2016 WL 98597 (S.D. Ohio Feb. 12, 2016). Briefly, Plaintiff Monica S. Rose has raised issues about the forced placement of automobile insurance on a vehicle which she purchased and then financed through Friendly Finance.  She claims that although the financing agreement allowed Friendly to force-place insurance to cover the collateral under certain circumstances, it did so at times when the agreement did not permit it.  She seeks to represent a class of other borrowers who allegedly experienced similar acts.

    Friendly Finance has asserted that almost all of the relevant financing agreements require the parties to arbitrate claims such as this and also contain a class action waiver, meaning that there are not a sufficiently large number of class

members whose agreements do not contain arbitration clauses to satisfy the numerosity requirement of Fed.R.Civ.P. 23. Following the issuance of the February 12, 2016 Order, the Court agreed to limit initial class-related discovery to the issue of numerosity, reasoning that if Friendly Finance were correct, there would be no need to consider the remaining factors which are pertinent to class certification.

It turned out that, no matter how the parties or the Court defined the class period (and the parties have different views on how long the relevant limitations period is), there were a large number of financing agreements which had to be reviewed in order to determine how many, if any, were exempt from arbitration and class action waiver. With some input from the Court, the parties agreed that it would suffice, at least initially, to review only a representative sample of these agreements. However, the parties were unable to agree to the precise method and scope of the sampling. In its Opinion and Order of May 9, 2016 (Doc. 56), the Court concluded that the initial look-back period would be ten years. It also directed the parties to arrange for the production of an appropriate sample of those contracts. In the same order, the Court permitted Friendly Finance to exclude from review contracts of customers who could not be class members either because they no longer owned the claim at issue or it had been forfeited due to bankruptcy or precluded by the entry of judgment.

According to the affidavit of Steven Pittler, which is attached to Doc. 62, Friendly Finance began by identifying "all accounts with earned premium from force-placed insurance with American Modern Insurance Company going back ten years in the States of Kentucky and Ohio and going back the applicable statute of limitations for written contracts in any remaining states." Id., ¶15. After eliminating contracts where judgments had been

-2-

entered or where the consumer had declared bankruptcy, there were 1,442 accounts left.  Some were duplicates, so the actual number of unique accounts was 1,423,

    Friendly Finance (at least according to Mr. Pittler) has a policy of destroying the files relating to accounts which have been closed for more than two years.  460 of the accounts on the list fell into this category, leaving 963 files available to review.  Id., ¶18.  Friendly Finance then selected every fifth account (192 in all) and copied the customer contract and any other document which contained an arbitration or class action waiver provision.  Of these 192 accounts selected for review, 183 had arbitration agreements and class action waiver clauses.  Id. at 92.  Although the other nine did not, Mr. Pittler says that because Friendly Finance had a policy of requiring these agreements, "[i]f an arbitration agreement was not found in the account file, the arbitration agreement was either misplaced or misfiled."  Id. at ¶23.  It is true, however, that Ms. Rose's agreement does not contain an arbitration agreement and class action waiver clause.  Even assuming, however, that these nine accounts did not include arbitration and class action waiver agreements, only 4.7% of the potential class members could be included in this case.  That would mean fewer than 67 class members exist among the 1,423 consumers whose accounts were identified by Friendly Finance (and only about 48 of the 963 accounts about which documentation was preserved).

    Ms. Rose does not accept this analysis.  She begins by noting that Friendly Finance initially identified a total of 5,560 accounts relating to people who might be class members.  She asserts that the Court's order directing the review of the accounts gave Friendly Finance "great latitude" to reduce the number to 1,423 (Doc. 66, at 3) and also says that the process by which the "missing" 460 accounts were eliminated was improper.

She takes issue with the sampling process, arguing that the selection of every fifth account should have included all 1,423 of those identified - although it is not clear how that would have affected the ultimate number of accounts chosen for review - and she also argues that Friendly Finance's assertion that there are only 48 potential class members is an "artificially low" number. Id. at 4.

In support of this latter assertion, she presents three different arguments. First, she claims that because Friendly Finance has the burden of proving that its account holders waived any right to be class members, and because it cannot prove that fact about the missing 460 accounts, the evidence shows that there are at least 508 class members. Second, she argues that even if only 20% of those accounts do not contain arbitration clauses and class waivers, that would add another 92 potential class members to the presumptive 48, and that a class of 140 can be properly certified. Third, focusing now on the 5,560 accounts originally identified, she argues that 35% of them relate to likely class members, deriving the 35% figure by again counting all of the "missing" account holders as class members. Whichever number is used, however, Ms. Rose concludes by noting that even if only 48 of the 963 accounts do not contain waivers or arbitration agreements, the identity of those persons is readily ascertainable from the account documents, and classes of 48 people can be certified.

## II. Discussion

It was the Court's hope that the procedure upon which the parties agreed would provide a definitive answer to the question of numerosity. In the Court's view, it has not. Numerosity involves a determination not just of the number of potential class members but the practicability of their joinder. As the Supreme Court has observed, "[t]he numerosity requirement

requires examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980). In terms of numbers alone, courts have said that "[w]hile not an absolute rule, it is generally accepted that a class of 40 or more members is sufficient to establish numerosity." See Appoloni v. United States, 218 F.R.D. 556, 561 (W.D. Mich. 2003). And although it is the plaintiff's burden to show that the numerosity requirement is satisfied, "[p]laintiffs merely are required to provide a reasonable estimate or some evidence of the number of class members." Bentley v. Honeywell Intern., Inc., 223 F.R.D. 471, 480 (S.D. Ohio 2004).

It is important to recall that the matter is before the Court not for a final determination on the issue of numerosity – that would come only if Ms. Rose moved to certify a class, which she has not – but for a decision on motions to strike class action allegations. In this context, the Court would grant the motion only if it appeared extremely unlikely that Ms. Rose could, were she to move for class certification, satisfy the numerosity requirement. The Court is not so persuaded.

Although the Court understands Defendants' arguments that there may not be even 48 class members because Friendly Finance had a practice of not accepting agreements that did not contain the arbitration and waiver language, it is not, at this point, willing to accept that conclusion. Mr. Pittler's affidavit is simply not probative enough on that point given the fact that Ms. Rose did not agree to arbitration and that there are at least nine other cases in which documentation is lacking. The record permits an inference that Friendly Finance's process for insuring that it did not agree to finance a vehicle purchase without such language was not fail-safe, and that it did enter into transactions, on an occasional basis, where that documentation was lacking, even if it also supports an inference – and that is all it would be – that the documents existed at one point but were somehow misplaced. The Court cannot, on the basis of the

present record, decide which is more likely the case.  It is also unwilling to infer that the 460 accounts where documentation was destroyed differ from the 963 where documentation exists.  If 4.7% of the 963 existing files do not contain arbitration agreements, why would 100% of the missing files have them?  That means, at a minimum, that there may be another 20 or so class members.  With the size of the class at between 48 and 67, there remains a viable question about whether a Rule 23 motion would be granted.  That is enough to justify denial of the pending motions, at least on the basis of the present record.

What probably needs to happen in this case is for the parties to review the remainder of the 963 accounts where documentation exists.  That review should reveal exactly how many of those customers could be class members.  If it turns out that at least 40 to 50 class members can be identified by this process, the case should then proceed to the class certification stage.  If the number is much smaller, the significance of the missing 460 accounts will have to be considered, and the Court will have to decide - probably on the basis of additional evidence - how likely it is that any or all of those customers could be considered to be class members.  That decision is not needed now, however.  The parties should complete their review of these additional files within sixty days, after which they should request a status conference to discuss next steps in the litigation.

## II. Order

For the reasons set forth above, the motions to strike class action allegations (Docs. 61 and 62) are denied.

/s/ Terence P. Kemp
United States Magistrate Judge